# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. |
| **$21,365 IN UNITED STATES CURRENCY,** | |
| Defendant. | |

## COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and Leigh Farmakidis, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881(a)(6).

## THE DEFENDANT *IN REM*

2. The defendant $21,365 in United States currency was seized from Zach Muetzel (Muetzel) on February 18, 2021, at the Kansas City International (KCI) Airport, located at 34 N. Rome Circle, Kansas City, Missouri. It is presently in the custody of the United States Marshals Service in the Western District of Missouri.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under

28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the defendant property is found in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395, because the action accrued in this district and the defendant property is found in this district.

**BASIS FOR FORFEITURE**

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; or 2) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

**FACTUAL ALLEGATIONS**

7. On February 18, 2021, Drug Enforcement Administration (DEA) Kansas City Interdiction Task Force (KCITF) Task Force Officers (TFO) Sargis Zadoyan, Martin Dye, and Adriane Ferrer, along with other members of KCITF, were conducting drug interdiction duties at KCI Airport Southwest Airlines.

8. TFO Andrey Ignatenko and DEA Special Agent (SA) Jennifer Waller were working interdiction duties at the Southwest Airlines bag room located at the KCI Airport Terminal B.

9. During the interdiction duties, TFO Ignatenko utilized his department-issued drug detection canine "Csibi" to conduct free air sniff of the luggage checked in by passengers prior to boarding their flight. The luggage is located on baggage carts sorted by flight numbers.

10. Canine Csibi began sniffing the bags in and around the cart with a destination to Los Angeles, California (LAX). During the sniff, canine Csibi encountered a black "Dot- Drops" hard-sided suitcase (hereinafter "Target Suitcase"), which was with other suitcases.

11. During the sniff, TFO Ignatenko observed Csibi's body stiffen up, and Csibi began sniffing all seams of the Target Suitcase. Csibi made a positive alert for the presence of narcotics odor in or about the Target Suitcase. The Target Suitcase had a name tag displaying flight number 3919 to LAX with the name MUETZEL/Zach.

12. Canine Csibi is a two-year-old brindle Dutch Shephard trained for specific odor narcotics detection at the Huston K9 Academy. Canine Csibi and TFO Ignatenko were certified in the specific odor narcotics detection of marijuana, cocaine, methamphetamine, and heroin by the North American Police Work Dog Association (NAPWDA) in February 2021.

13. TFO Ignatenko and SA Waller informed TFOs Zadoyan and Ferrer that Csibi alerted positive to the odor of narcotics on or about a suitcase, with a checked in bag tag under the name of Zach Muetzel and Southwest flight 3919 to LAX.

14. TFO Ferrer recognized Muetzel's name from a previous encounter with him. On January 21, 2021, DEA KCITF members seized three bundles of marijuana from Muetzel, who was flying to Kansas City from Los Angeles, California on Spirit flight 732.

15. TFOs Ferrer and Zadoyan, who were standing near the Southwest Airlines security check point inside the secured area, located Muetzel, who was with Kelly Lynn Snow (Snow), Muetzel's girlfriend.

16. TFOs Ferrer and Zadoyan observed Muetzel and Snow walk to gate 45 and sit down on a bench. Muetzel and Snow each had a carry-on backpack.

17. TFO Ferrer introduced herself using her DEA credentials.

18. Muetzel and Snow both verbally agreed to speak with TFO Ferrer.

19. Upon request, Muetzel and Snow provided their identification to TFO Ferrer.

20. TFO Ferrer informed Muetzel and Snow that there was a positive alert for the odor of narcotics from Muetzel's checked suitcase.

21. TFO Ferrer asked if Muetzel or Snow had any illegal narcotics in their suitcase, and they both stated that they did not.

22. Muetzel stated that he used marijuana. TFO Ferrer asked if they had any marijuana with them and Muetzel and Snow stated that they did not.

23. Muetzel gave verbal consent for the agents to search the Target Suitcase.

24. TFO Ferrer asked if Muetzel or Snow had any large amount of U.S. currency with them. Snow stated she did not. Muetzel stated they had some travel money.

25. TFO Ferrer asked Muetzel how much travel money he had, and Muetzel did not specify the amount of money he had.

26. Muetzel gave verbal consent for TFO Ferrer to search his carry-on backpack.

27. Muetzel reached inside his backpack and pulled out an envelope containing U.S. currency and stated that it was their expense money for the trip.

28. Muetzel opened the envelope upon request and handed it to TFO Ferrer. Inside the envelope, along with the money, there was a withdrawal receipt from Commerce Bank in the amount of $8,000.00.

29. TFO Ferrer then asked if she could search the backpack. Muetzel reached inside the backpack and handed a second envelope containing U.S. currency to TFO Ferrer after opening it.

30. TFO Ferrer placed both envelopes in front of Muetzel and asked again if she could search the backpack. Muetzel gave consent to search the backpack, but again reached inside the backpack and pulled out a zipper bag, which contained a third envelope containing U.S. currency.

31. Muetzel opened the third envelope and handed it to TFO Ferrer.

32. The three envelopes were from Commerce Bank, and each envelope had a withdrawal receipt enclosed. Each withdrawal receipt was from the same account but from a different Commerce Bank branch in Kansas City. One receipt was for $8,000.00, dated February 16, 2021 at 11:58 a.m. Another receipt was for $8,000.00, dated February 16, 2021 at 5:20 p.m. The other receipt was for $4,000.00, dated February 17, 2021 at 2:38 p.m. and showed an available balance of $1,152.75.

33. TFO Ferrer returned all three envelopes containing the U.S. currency and the withdrawal receipts to Muetzel (hereinafter "Envelope Currency").

5

34. Snow gave consent to search her backpack and no potential contraband was located in the backpack.

35. Snow stated she only had $5.00 in her wallet.

36. Muetzel asked if they were going to be able to make it to their flight to Los Angeles. TFO Ferrer advised Muetzel and Snow that there was no reason that they could not board their flight.

37. Muetzel stated several times that the Envelope Currency belonged to him and he had the bank receipts to prove it. Muetzel also stated that the total amount of the Envelope Currency was $20,000.00.

38. Muetzel stated they were going to Los Angeles to celebrate Snow's birthday and go shopping.

39. The Target Suitcase contained plastic "Food Saver" bags, packing tape, a vacuum heat-sealing machine with a heat seal plastic bag, "Purple Rose Supply" box containing a vape cartridge, along with a few articles of clothing.

40. Muetzel claimed that he alone packed the Target Suitcase.

41. Muetzel claimed the Envelope Currency was from his Commerce Bank account.

42. Muetzel claimed that he counted the Envelope Currency himself, and that it totaled $20,000.00.

43. When later questioned about the purpose of the money, Muetzel stated that they were going to go to a casino, and that they may look into purchasing a vehicle. Muetzel claimed they did not have a vehicle in mind, but it was just something they thought about.

44. Muetzel stated that he purchased the airline tickets on February 2, 2021.

45. Muetzel stated they were going to stay in Los Angeles for four days.

46. Muetzel stated they were going to fly back to Kansas City on February 21, 2021.

47. Muetzel stated he was employed by T-Mobile as a sales representative earning approximately $3,500.00 per month after taxes.

48. Muetzel stated he owned a house that he was renting to a friend for $600 a month. Muetzel stated the mortgage payment was $300.00 a month, with profit of $300.00 a month.

49. Muetzel stated his monthly rent was $1,300.00 a month and utilities were $300.00 a month. Muetzel stated he had a student loan payment of $180.00 a month.

50. Muetzel stated he had already filed his 2020 income taxes and estimated his total income at $50,000.00. Muetzel estimated his 2019 total income as approximately $45,000.00.

51. Muetzel later stated the Envelope Currency belonged to both him and Snow. Muetzel stated they both deposited money in the Commerce Bank account.

52. Snow then stated that they recently sold her vehicle.

53. Muetzel admitted that he had been previously arrested for illegal narcotics.

54. Muetzel consented to a canine sniff of the Envelope Currency and his wallet, which also contained currency.

55. Canine Csibi positively alerted to the odor of narcotics in or around the Envelope Currency and the wallet.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

56. The Plaintiff repeats and incorporates by reference the paragraphs above.

57. By the foregoing and other acts, defendant $21,365 in United States currency constitutes moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

58. The Plaintiff repeats and incorporates by reference the paragraphs above.

59. By the foregoing and other acts, defendant $21,365 in United States currency constitutes moneys, negotiable instruments, securities, or other things of value used or intended to be used to facilitate any violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

8

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

                                        Teresa A. Moore
                                        Acting United States Attorney

By    LEIGH FARMAKIDIS    Digitally signed by LEIGH FARMAKIDIS
                                     Date: 2021.05.26 11:28:04 -05'00'
                                        Leigh Farmakidis
                                        Assistant United States Attorney
                                        400 E. 9th Street, Fifth Floor
                                        Kansas City, Missouri 64106
                                        Telephone: (816) 426-3122
                                        Leigh.Farmakidis@usdoj.gov

# VERIFICATION

I, Task Force Officer Martin Dye, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs seven through 55 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/26/21

MARTIN DYE (Affiliate)
Digitally signed by MARTIN DYE (Affiliate)
Date: 2021.05.26 11:23:32 -05'00'

Martin Dye
Task Force Officer
Drug Enforcement Administration